649 So.2d 975 (1994)
Janice Ellen Roberts McELWEE
v.
William Derr McELWEE.
No. 93 CA 1010.
Court of Appeal of Louisiana, First Circuit.
August 17, 1994.
*976 Kenneth R. Williams, Baton Rouge, for plaintiff-appellant Janice Ellen Roberts McElwee.
Jewel E. Welch, Jr., Baker, for defendant-appellee William Derr McElwee.
Before FOIL, PITCHER and PARRO, JJ.
PARRO, Judge.
Janice Ellen Roberts McElwee ("Janice") appeals the trial court's judgment in an action to partition the community property which existed between her and her former husband, William Derr McElwee ("Derr"). This court reverses in part, vacates in part, and remands.
The primary issue presented by this appeal is whether the trial court complied with the procedures outlined in LSA-R.S. 9:2801 in partitioning the community of the parties.

Standard of Review
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La. 1993). Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Id. at 882; See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).

Facts and Procedural History
Janice and Derr were legally separated by judgment rendered on January 11, 1989 and signed on May 9, 1989. The community was dissolved retroactively to June 10, 1988, the date of the filing of the petition for legal separation. On August 30, 1989, Janice filed a petition for partition of the community of acquets and gains, together with a sworn detailed descriptive list of each community asset and liability. Derr responded by filing an answer and traversal of her community property list, together with his sworn detailed descriptive list of each community asset and liability known to him.
Since the parties disagreed on listed items and their valuation, one hearing as to all issues was held on July 30, 1992. Thereafter, the trial court rendered judgment on October 23, 1992, which was signed on December 4, 1992, in favor of Derr recognizing the following total credits in his favor: $600.00 paid on the Mastercard account, $3,021.15 paid on the second mortgage note, and $24,965.05 paid on the first mortgage *977 note. Additionally, the judgment awarded ownership of the family home to Derr.
From this judgment, Janice appealed and set forth eight assignments of error.

Procedure Mandated by LSA-R.S. 9:2801
In her first assignment of error, Janice contends that the trial court erred in failing to formally allocate community assets, liabilities, and credits between the parties and in failing to render a formal accounting between them, as required by law.
LSA-R.S. 9:2801 sets forth the procedure to be followed by the parties in partitioning the community property and settling claims between them. In particular, LSA-R.S. 9:2801(4) directs the trial court as follows:
The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
(d) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.
(e) Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset cannot be allocated, assigned by the drawing of lots, or sold at private sale.
It is incumbent upon the trial court to follow the procedure outlined in the statute. Thomas v. Thomas, 552 So.2d 793, 795 (La. App. 1st Cir.1989).
The record does not reflect that the trial court valued any of the assets, determined the liabilities, or adjudicated all the claims of the parties in this case. Since we do not have the benefit of the trial court's factual findings and legal conclusions with respect to the above, it is impossible for this court on review to determine if each spouse received property of an equal net value, or if one party was entitled to have the trial court order the payment of an equalizing sum of money in the event that the allocation of the assets and liabilities resulted in an unequal net distribution. See LSA-R.S. 9:2801(4)(b) and (c). It may well be that the judgment in this case is just and proper in that each party received property of an equal net value such that it was unnecessary for the trial court to order an equalizing sum of money. However, in light of the trial court's failure to comply with the mandates of LSA-R.S. *978 9:2801(4), this court is forced to remand this matter to the trial court for proper completion of these partition proceedings in accordance with the applicable law.
Nevertheless, since the judgment of the trial court did specifically and inferentially adjudicate certain claims for reimbursement, this court will address those assignments of error pertaining to these particular claims.

Derr's Reimbursement Claims
Janice does not contest the adjudication of Derr's reimbursement claim on the second mortgage note for $1,590.58 (½) of the total payment). However, Janice contends that the trial court erred in granting Derr a credit for amounts allegedly paid on the first mortgage note. She also contends that the trial court erred in allowing a $600.00 credit for amounts allegedly paid on the Mastercard account.
The paying party is entitled to be reimbursed for one-half of the separate funds used to pay a community debt. LSA-C.C. art. 2365; Williams v. Williams, 509 So.2d 77, 80-81 (La.App. 1st Cir.1987). The burden of proof is on the party claiming reimbursement. Maginnis v. Maginnis, 580 So.2d 709, 711 (La.App. 1st Cir.), writ denied, 588 So.2d 111 (La.1991).

A. Payment on the first mortgage note
Both parties listed the balance due on the first mortgage note on the family home as a debt of the community in their respective sworn detailed descriptive list. The parties stipulated that the balance owed as of the day prior to the trial on the merits was $49,066.91, and it appeared to be undisputed that the first mortgage note was a community debt. The issue is whether Derr proved by a preponderance of the evidence that he expended his separate funds to make payments on this note.
A review of the record shows Derr's attorney questioned Janice regarding payment of the house note following termination of the community. She admitted the existence of the debt and testified that $502.65 was owed monthly on this note, although she admittedly did not make any payments on this note following the termination of the community. When asked whether Derr had made all payments since June, 1988, she responded, "To my knowledge, yes, sir." This response was later clarified when her attorney asked her if she had obtained any personal knowledge that Derr made payments on the note. She testified that she did not have personal knowledge that he in fact made any payments, although she assumed that he had been paying the note since he was living in the house.
Derr did not testify that he personally made any or all payments since June, 1988, or that the mortgage was current. Moreover, the record on appeal is devoid of documents, receipts, canceled checks, and bank records which support Derr's reimbursement claim. However, this court notes that the colloquy by the trial judge and the attorneys at the completion of the trial indicates confusion as to the evidence presented. It is unclear from the record whether additional evidence was presented in support of this claim for reimbursement. Since our review of the record leaves this court with doubt as to whether the appellate record is complete, this court is forced to remand this case for proper consideration and resolution of Derr's claim for reimbursement regarding payment of the first mortgage note. See Whetstone v. Dixon, 616 So.2d 764, 774 (La.App. 1st Cir.), writ denied, 623 So.2d 1333 (La.1993).

B. Payment on Mastercard account
As noted earlier, Janice also submits that the trial court erred in allowing a $600.00 credit in Derr's favor for separate funds used to pay off the Mastercard bill.
Generally, monetary expenditures are capable of being proven by documentary evidence such as canceled checks, receipts, etc., as well as by testimony. Cenac v. Cenac, 492 So.2d 39, 43 (La.App. 1st Cir.1986). In this regard, LSA-C.C. art. 1846 provides:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.

*979 If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
The "one witness" called for in LSA-C.C. art. 1846 may be the one seeking to have the debt recognized. See Cenac v. Cenac, 492 So.2d at 43. The "corroborating circumstances" need not establish every element of the obligation. The trial court's assessment of credibility of the witness and corroboration are entitled to great weight. Id. at 44.
Derr testified as to the existence of the community indebtedness on the Mastercard account. However, he failed to introduce a canceled check, a statement of account, a receipt showing payment, or other testimony to corroborate his testimony. Although Derr recalled personally paying off the Mastercard debt, he did not know if he had a receipt to show payment on the account. He could not recall when the alleged payment was made. Since the debt was in excess of $500.00, the testimony of Derr alone without other corroborating circumstances was insufficient to meet his burden of proof, and, therefore, the trial court was clearly wrong in allowing a credit for this alleged payment.

Janice's Reimbursement Claim
Janice argues that she is entitled to a credit for the rental value of the home due to Derr's exclusive use of it following the termination of the community regime.
It is well settled in this circuit that a spouse who has exclusive use of the matrimonial domicile following the termination of the community is not liable to the other spouse for rental payments on the home unless ordered to pay such rental by the trial court or unless agreed to by the parties. LSA-R.S. 9:374(C); Bolden v. Bolden, 524 So.2d 10, 12 (La.App. 1st Cir.1988). Absent any evidence that the parties agreed to a rental payment or that Derr was ordered by the court to make rental payments to Janice, the trial court's failure to award Janice a credit was not in error.
Since this case is being remanded for proper completion in accordance with LSA-R.S. 9:2801(4), this court pretermits discussion of the other assignments of error raised by Janice.

Decree
For the above reasons, that portion of the trial court's judgment allowing a credit for amounts paid on the Mastercard account is reversed; that portion of the judgment allocating ownership of the former marital home to Derr is vacated; that portion of the judgment allowing a credit for amounts paid on the first mortgage note is also vacated; and this matter is remanded to the trial court for proper completion consistent with the law and the views expressed in this opinion. Costs of this appeal are assessed equally between the parties.
REVERSED IN PART, VACATED IN PART AND REMANDED.