McClendon, j.
 

 12An ex-husband appeals a trial court judgment partitioning the former community of acquets and gains. The ex-wife answered the appeal. For the reasons that follow, we affirm in part, vacate in part, reverse in part, and remand.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 Michelle Taylor Hoover and Tujack Gene Hoover were married on May 27,
 
 *767
 
 1997. Of the marriage, one child was born on October 9, 1997. The parties physically separated on February 2, 2006, and a petition for divorce was filed by Mrs. Hoover on February 10, 2006. A judgment of divorce was signed on March 19, 2007.
 

 On December 14, 2007, Mr. Hoover filed a Petition for Judicial Partition of Community Property. Trial of the matter was held on October 27, 2009 and October 30, 2009, after which the trial court took the matter under advisement. Oral reasons for judgment were assigned in open court on November 16, 2009. Thereafter, the judgment of partition was signed on February 4, 2010. Following the denial of his motion for new trial, Mr. Hoover appealed the judgment of the trial court, assigning the following specifications of error:
 

 1. The trial court failed to include in the judgment the calculations used to determine the final allocation of assets, liabilities, and reimbursements.
 

 2. The trial court abused its discretion in awarding Mrs. Hoover rental value in the community home of $2,500.00 per month, for a total of $112,500.00.
 

 3. The trial court abused its discretion by failing to assign the income from the community property in Mississippi to Mrs. Hoover and allow Mr. Hoover a credit in reimbursement.
 

 Mrs. Hoover answered the appeal, asserting the following:
 

 1. The trial court erred in determining that the immovable property located at 1982 East Pass Road in Gulfport, Mississippi was community property.
 

 |¾2. The trial court erred in setting the value of the movable equipment owned and operated by Hoover Tree Experts at $224,528.00.
 

 3. The trial court erred in awarding Mr. Hoover $72,166.95 in reimbursement for mortgage payments paid for the immovable property located at 13840 Old Spanish Trail in Boutte, Louisiana.
 

 STANDARD OF REVIEW
 

 An appellate court’s review of facts is governed by the manifest error-clearly wrong standard.
 
 Rao v. Rao,
 
 05-0059, p. 6 (La.App. 1 Cir. 11/4/05), 927 So.2d 356, 360,
 
 writ denied,
 
 05-2453 (La.3/24/06), 925 So.2d 1232. However, it is well settled that a trial court has broad discretion in adjudicating issues raised in a judicial partition proceeding under LSA-R.S. 9:2801. If the trial court’s valuations of community assets are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed.
 
 Id.,
 
 05-0059 at p. 6, 927 So.2d at 360-61.
 

 DISCUSSION
 

 Mr. Hoover’s First Assignment of
 
 Error—
 
 LSA-R.S. 9:2801
 

 In his first assignment of error, Mr. Hoover asserts that the trial court erred in failing to include in the judgment the calculations used to determine the final allocation of assets, liabilities, and reimbursements as required by LSA-R.S. 9:2801. Initially, we note that Mr. Hoover is not disputing the calculations, but rather the fact that the calculations were not included in the judgment.
 

 The provisions of LSA-R.S. 9:2801 set forth the procedure by which community property is to be partitioned when the spouses are unable to agree on a partition of community property. LSA-R.S. 9:2801 A;
 
 Bible v. Bible,
 
 03-2793, p. 4 (La.App. 1 Cir. 9/17/04), 895 So.2d 547, 549-50,
 
 writ denied,
 
 05-1081 (La.6/17/05), 904 So.2d
 
 *768
 
 700. Louisiana Revised Statute 9:2801 A(l)(a) provides that within forty-five days of service of a motion by either party, each party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities. Within sixty days of the date of service of the last-filed detailed descriptive list, each party shall | ^either traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. LSA-R.S. 9:2801 A(2). At the trial of such traverses, the court must determine the community assets and liabilities, and the valuation of assets is to be determined at the trial on the merits. However, the court, in its discretion, may by ordinary procedure try and determine at one hearing, all issues, including those raised in the traverses. LSA-R.S. 9:2801 A(2);
 
 Bible,
 
 03-2793 at pp. 4-5, 895 So.2d at 550.
 

 Further, LSA-R.S. 9:2801 A(4) provides, in pertinent part:
 

 The court shall then partition the community in accordance with the following rules:
 

 (a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
 

 (b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
 

 (c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
 

 (d)In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
 

 There is nothing in the statute that requires that the calculations be made part of the partition judgment. What is required is that the assets be valued, liabilities be determined, and claims adjudicated. LSA-R.S. 9:2801 A(4). In this matter, a review of the record clearly shows that the trial court assessed a value for each asset and liability, as explained in its oral reasons for judgment. | ¡¡Further, the trial court provided its own spreadsheet to the parties showing all values and calculations. Thus, this case is factually distinguishable from
 
 McElwee v. McElwee,
 
 93-1010 (La. App. 1 Cir. 8/17/94), 649 So.2d 975, cited by Mr. Hoover. This assignment of error lacks merit.
 

 Mr. Hoover’s Second Assignment of Error
 
 — Rental
 
 Reimbursement
 

 In this assignment of error, Mr. Hoover urges that the trial court erred in assessing Mrs. Hoover rental reimbursement for the former community home in the amount of $2,500.00 per month, for a total of $112,500.00, when no evidence was presented concerning the rental value.
 

 Currently, LSA-R.S. 9:374 C provides:
 

 
 *769
 
 A spouse who, in accordance with the provisions of Subsection A or B of this Section, uses and occupies or is awarded by the court the use and occupancy of the family residence, a community immovable occupied as a residence, or a community manufactured home as defined in R.S. 9:1149.2 and occupied as a residence, regardless of whether it has been immobilized, shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided. If the court awards use and occupancy to a spouse, it shall at that time determine whether to award rental for the use and occupancy and, if so, the amount of the rent. The parties may agree to defer the rental issue for decision in the partition proceedings. If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy.
 

 Of particular importance in this case is the fact that the parties stipulated prior to trial that Mrs. Hoover would receive a fan-market rental reimbursement for Mr. Hoover’s use of the family home. In the consent judgment signed on September 5, 2006, the parties agreed that Mr. Hoover would have the exclusive use of the former matrimonial domicile, and Mrs. Hoover was “awarded fair market rental reimbursement, with the value of same to be determined at a later date.” Further, the record contains an appraisal, with photographs, of the former community home in St. Amant, which was introduced as a joint exhibit.
 
 [1]
 

 [(At trial, when Mrs. Hoover was describing the house, counsel for Mr. Hoover made an objection to Mrs. Hoover testifying about the rental value. The trial court responded by stating it would allow Mrs. Hoover to describe the house for the court, but that it would not allow her to testify as to the fair market rental value. No evidence regarding the rental value of the house was offered or introduced.
 

 In its oral reasons for judgment, the trial court awarded Mrs. Hoover rental value in the community home in the amount of $2,500.00 per month, for a total of $112,500.00. When asked how it determined the rental value, the court responded, “Since there was no evidence, the Court looked at the size of the home and just my judgment.” The court further stated, “What I know of, from $5,000 [sic] home with a pool, I thought $2,500 a month was reasonable.”
 

 Based on the record before us, we are unable to determine whether the trial court’s award of $2,500.00 per month to Mrs. Hoover is in error. The parties stipulated that “fair market rental reimbursement” would be awarded to Mrs. Hoover. Although evidence was presented regarding the appraised value of the home, no evidence was presented to the trial court regarding its rental value. Accordingly, we vacate that part of the judgment awarding Mrs. Hoover rental reimbursement for the former community home in the amount of $2,500.00 per month, for a total of $112,500.00. Further, given that the consent judgment stipulated that Mrs. Hoover would receive fair market rental value, we remand the matter to the trial court for a determination of said rental
 
 *770
 
 value of the home and therefore a determination of the appropriate rental reimbursement.
 
 See Cryer v. Cryer,
 
 96-2741, p. 9 (La.App. 1 Cir. 12/29/97), 706 So.2d 167, 171-72;
 
 Gravois v. Gravois,
 
 03-559, p. 7 (La.App. 5 Cir. 10/15/08), 860 So.2d 90, 94.
 
 Mr. Hoover’s Third Assignment of Error
 
 — Rental
 
 Income from the Mississippi Property
 

 In this assignment of error, Mr. Hoover contends that he is entitled to receive reimbursement credit for his portion of the income generated from immovable property located in Gulfport, Mississippi, which the trial court |7determined was community property. Initially, we note that Mr. Hoover never included this claim in his sworn detailed descriptive list. Thus, the issue was not addressed in the trial court and was raised for the first time on appeal. Well-settled jurisprudence establishes that as a general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the trial court has not addressed.
 
 Council of City of New Orleans v. Washington,
 
 09-1067, p. 3 (La.5/29/09), 9 So.3d 854, 856.
 
 See also
 
 Uniform Rules-Courts of Appeal, Rule 1-3. Even were we to consider Mr. Hoover’s claim, it is not supported by the record as more fully discussed hereafter. This assignment of error lacks merit.
 

 Mrs. Hoover’s Answer to the
 
 Appeal—
 
 Classification of the Mississippi Property
 

 In her first assignment of error, Mrs. Hoover maintains that the trial court erred in classifying the Gulfport, Mississippi immovable property as community.
 

 Under Louisiana law, property of married persons is generally characterized as either community or separate. LSA-C.C. art. 2335. Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. LSA-C.C. art. 2340. As a matter of public policy and in the interest of fairness, this community presumption is rebuttable by either spouse upon a showing by a preponderance of the evidence the separate nature of property brought into the community.
 
 Talbot v. Talbot,
 
 03-0814, p. 12 (La.12/12/03), 864 So.2d 590, 600. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not.
 
 Id.
 

 The spouse seeking to rebut the presumption bears the burden of proving the property is separate in nature.
 
 Ross v. Ross,
 
 02-2984, p. 9 (La.10/21/03), 857 So.2d 384, 390. A trial court’s finding regarding the nature of property as being either community or separate is a factual determination subject to the manifest error-clearly wrong standard of review.
 
 Id.,
 
 02-2984 at p. 18, 857 |s So.2d at 395;
 
 Hano v. Latino,
 
 03-0088, p. 5 (La.App. 1 Cir. 11/7/03), 868 So.2d 61, 64,
 
 writ denied,
 
 03-3328 (La.2/13/04), 867 So.2d 694.
 

 Mrs. Hoover’s father, Bobby Taylor, testified at trial. He stated that he runs his restaurant equipment business out of the Mississippi property. Mr. Taylor testified that the property was acquired in 1998. He stated that, originally, he had intended to purchase the property, but after suffering a heart attack and going through open heart surgery, he thought it would be easier for his two children, if something happened to him, to put the property in their names as well. Mr. Taylor further testified that neither his daughter, nor his son, made any down payment. Mr. Taylor stated that he paid it all and that he has paid “every single nickel” on the mortgage. He also stated that he has paid all property taxes and insurance on the property.
 
 *771
 
 Further, he claims as income on his taxes the rents he receives on the mini warehouses, trailers, and the commercial building on the property. Mr. Taylor testified that in his opinion, the property belongs to him. He told his children when he bought it in 1998, that it was theirs when he died, but until then it was his retirement income. Mr. Taylor also testified that since her divorce, he has given his daughter about $1,500.00 per month for living expenses, which is in no way related to the Mississippi property.
 

 Mrs. Hoover testified that neither she nor Mr. Hoover ever contributed to the down payment for the Mississippi property and further that they never made any mortgage payments on the property. She also testified that they never paid any insurance or property taxes and never received any income from the property during their marriage. Additionally, Mrs. Hoover stated that she and Mr. Hoover never claimed any income from the Mississippi property on their income taxes and that she has no ownership interest in her father’s business. Mrs. Hoover stated that she and Mr. Hoover did not think that they owned the property and that she and Mr. Hoover talked about and knew that if anything happened to her father, the property was for her, her brother, and her mother. |9Mrs. Hoover did admit that since February of 2006, when she and Mr. Hoover separated, her father has helped her out financially.
 

 Mr. Hoover testified and admitted that he did not list the Mississippi property on his financial statement submitted to First American Bank in 2001. Mr. Hoover also acknowledged that he made no mortgage payments on the property, nor did he pay any insurance or property taxes. Further, he admitted that he never claimed any income at any time from the Mississippi property on any of his income tax returns. However, he testified that Mrs. Hoover used money taken from his business to use as a down payment for the property, but he could not specify how much and conceded that he had no documentation in support thereof. He also stated that he thought Mrs. Hoover received income from the property, but he did not know in what amounts, and acknowledged that payments to Mrs. Hoover from her father could have been gifts.
 

 Upon a thorough review of the record in this matter, we find that the trial court was manifestly erroneous in concluding that the Mississippi property was community property. The evidence established that the property was paid for entirely by Mrs. Hoover’s father and that the community received no income from the property. Importantly, Mr. Hoover did not list any interest in the property on his loan application, nor during the marriage was any income from the Mississippi property reported on their tax returns. We find that the evidence presented at trial was sufficient to rebut the presumption of community established in LSA-C.C. art. 2340. Accordingly, we reverse the trial court’s judgment on the Mississippi property, finding that Mrs. Hoover established that it was not community.
 

 Mrs. Hoover’s Second Assignment of Error
 
 — The
 
 Value of the Movable Equipment
 

 Mrs. Hoover next contends that the trial court erred in valuing the movable equipment owned by Hoover Tree Experts, Mr. Hoover’s unincorporated business entity. The trial court determined the value to be $224,528.00. In arriving at that amount, the trial court considered and rejected Mr. Hoover’s Evaluation in the amount of $77,500.00, as submitted on February 26, 2008, when he filed his sworn detailed descriptive list, as well as his valuation on an October 2008 loan application in the amount of $406,000.00. The trial
 
 *772
 
 court found neither valuation credible. In its oral reasons, the trial court stated that it used Mr. Hoover’s income tax return and calculated depreciation to arrive at the $224,528.00 amount.
 

 Mrs. Hoover argues that the trial court should have used the $406,000.00 figure because it was the value given to a bank closest in time to the trial and was the most credible. On the other hand, Mr. Hoover asserts that the trial court was within its discretion in valuing the movable property, although he believed the value to be much less. We find no abuse of discretion in the trial court’s valuation of the Hoover Tree equipment.
 

 Mrs. Hoover’s Third Assignment of Error
 
 — Reimbursement
 
 for the Boutte Property
 

 In her last assignment of error, Mrs. Hoover is appealing the $72,166.95 reimbursement credit in favor of Mr. Hoover, for mortgage payments he made on the Boutte property. Mrs. Hoover argues that although she is not disputing that the Boutte mortgage is a community debt, the reimbursement credit should not have been allowed because the property has been exclusively used by and for the benefit of Mr. Hoover and Hoover Tree since the termination of the community. Further, Mrs. Hoover contends, because Mr. Hoover did not collect rent from Hoover Tree, the mortgage credit gives him a “windfall” and creates an inequity to Mrs. Hoover. Mrs. Hoover maintains that as a prudent administrator of a community asset, Mr. Hoover should have collected rent from Hoover Tree for its use of the community property.
 

 Louisiana Civil Code art. 2365 provides, in pertinent part:
 

 If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
 

 | nWe find nothing in the civil code’s plain language that would allow us to ignore the code’s clear instruction. Further, the 1979 Revision Comments to LSA-C.C. art. 2365 clearly emphasize that “[w]hen the separate property of a spouse is used to satisfy
 
 any
 
 community obligation, the spouse is entitled upon termination of the community property regime to reimbursement for one-half of the amount or the value that the property had at the time it was used.” Mr. Hoover used his own separate property to satisfy a community obligation and is therefore entitled to a reimbursement. Further, Mrs. Hoover failed to establish any rental value for this undeveloped property where equipment was stored. This assignment of error is without merit.
 

 CONCLUSION
 

 For the foregoing reasons, that portion of the trial court’s judgment related to the rental value of the former community home is vacated; that portion of the judgment classifying the immovable property located at 1982 East Pass Road, Gulfport, Mississippi as community is reversed; and this matter is remanded to the trial court for the limited purpose of establishing the fair market rental value of the community home and the proper completion of the community property partition consistent with the law and the views expressed herein. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally between the parties.
 

 AFFIRMED IN PART; VACATED IN PART; REVERSED IN PART; AND REMANDED.
 

 [1]
 

 . The appraisal, dated January 26, 2009, described the home as ten to twenty years old, in average condition, and maintained, but in need of maintenance and repairs. It is a five-bedroom 4,597-square-foot home on 1.59 acres. The property also includes a pool, hot tub, patio and deck area, a gazebo and large workshop. The property was appraised for $344,000.00.